IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AIDA L. F.., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV300 |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Aida L. F. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on April 28, 2022, alleging a disability onset date of October 29, 2021. (Tr. at 19, 194-95.)[2] Plaintiff's application was denied initially (Tr. at 84-91, 104-08) and upon reconsideration (Tr. at 92-103, 110-13). Thereafter, Plaintiff

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 114.) On February 12, 2024, Plaintiff, along with her attorney, attended the subsequent hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 19, 38-83.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 32-33), and on February 24, 2025, the Appeals Counsel denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between her alleged onset date, October 29, 2021, and her date last insured for purposes of DIB, December 31, 2023. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 21.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Rheumatoid arthritis; fibromyalgia; irritable bowel syndrome; and neurocognitive disorder[.]

(Tr. at 22.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 22-24.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following additional limitations:

> [Plaintiff] can do frequent climbing of ramps and stairs, but only occasional climbing of stepladders up to 4 vertical feet in height, with no climbing of higher ladders or of ropes or scaffolds of any height; [Plaintiff] can do occasional stooping, kneeling, crouching, and crawling; she can do frequent reaching with the bilateral upper extremities, provided only occasional overhead reaching and overhead weight-bearing bilaterally; [Plaintiff] can do frequent handling, fingering, pushing, pulling, and use of hand controls with the bilateral upper extremities; she can frequently use . . . foot controls with the bilateral lower extremities; [Plaintiff] can have occasional exposure to extreme cold and heat, and to vibration and high, exposed places; she can do work needing little or no judgment to do simple duties that can be learned on the job or in a short period of time, usually within 30 days, and for which little specific vocational preparation and judgment are needed; [Plaintiff] can do work requiring sustained concentration and persistence for no greater than approximately 2 hours at a time; she can do work that is not frequently performed on an assembly line or at a similar production-pace; [Plaintiff] can adapt to occasional changes to the work setting and the manner and method of performing the assigned work—work that frequently provides for two 15-minute breaks and one 30-minute break for each 8-hour shift worked, occurring at such times as directed by the employer, and during which the employee is provided access to indoor toilet facilities if needed; and [she] can have occasional interactions with supervisors, coworkers, and the public when performing the assigned work.

(Tr. at 24) (emphasis added). At step four of the analysis, the ALJ determined, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform any of her past relevant work. (Tr. at 31.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 31-32.)

Plaintiff now contends that at step five of the sequential process, the ALJ failed to identify and resolve apparent conflicts between the testimony of the Vocational Expert ("VE") and the Dictionary of Occupational Titles ("DOT"). Specifically, Plaintiff contends that the VE's testimony conflicted with the DOT with respect to the limitation on overhead reaching, but that the ALJ failed to obtain a reasonable explanation for the conflict as required by SSR

00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) [5]. For the reasons set out below, the Court agrees and concludes that remand is required under the Fourth Circuit's decision in Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015).

In Pearson, a VE testified that a claimant was capable of performing three occupations. For each of the three occupations, the Dictionary of Occupational Titles listed frequent reaching as a requirement. Pearson, 810 F.3d at 210. However, the ALJ found that the claimant's non-dominant arm could only occasionally reach upward. Id. Based on the DOT's broad definition of reaching (i.e., "[e]xtending hand(s) and arm(s) in any direction") the Fourth Circuit held that the occupations identified by the expert may require frequent bilateral

---

[5] SSR 00-4p provides that:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> . . . .
>
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Notably, SSR 00-4p was rescinded by SSR 24-3p: Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions. 2024 WL 5256890 (Jan. 6, 2025). The new guidance explains that "the DOT is not the only reliable source of occupational information" and that "requiring our adjudicators, VSs, and VEs to identify and explain conflicts with the DOT is time consuming . . . [and] led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified. . . . We are rescinding SSR 00-4p and will no longer require our adjudicators to identify and resolve conflicts between occupational information provided by VSs and VEs and information in the DOT." SSR 24-3p. The Court will nevertheless consider the claims raised under SSR 00-4p, since it was in effect at the time of the ALJ's 2024 decision in this case. SSR 24-3p n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

overhead reaching. Id. at 210-211. Because of the apparent conflict between the VE's testimony and the DOT, the ALJ was required to elicit a reasonable "explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching," before relying on the expert's testimony. Id. at 211. The Fourth Circuit also clarified that if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the expert's testimony rather than the DOT. Id. at 209-11; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

Here, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified jobs. Specifically, the ALJ identified four representative jobs available in the national economy that Plaintiff could perform:

- Marker (DOT 209.587-034, 1991 WL 671802)
- Photocopy machine operator (DOT 207.685-014, 1991 WL 671745),
- Non-postal mail clerk (DOT 209.687-026, 1991 WL 671813), and
- Router (DOT 222.587-038, 1991 WL 672123).

(Tr. at 32.) As Plaintiff correctly notes, the DOT descriptions for all of these jobs specify that they involve "frequent" reaching, indicating that the jobs involve the performance of this activity from 1/3 to 2/3 of the workday. Although the RFC in the present case provides that Plaintiff "can do frequent reaching with the bilateral upper extremities," it further specified that Plaintiff could only perform "occasional overhead reaching and overhead weight-bearing

bilaterally." (Tr. at 24.) "Occasional" activities may only be performed for up to 1/3 of the workday. Plaintiff argues that this apparent conflict requires remand.

As discussed above, the Fourth Circuit's decision in Pearson similarly involved a limitation to only occasional overhead reaching. There, "[t]he ALJ found [that the claimant's] non-dominant arm could only occasionally reach upward," but for all three of the jobs cited by the VE, "the [DOT] list[ed] frequent reaching as a requirement." Pearson, 810 F.3d at 210. The Fourth Circuit explained that, "[a]lthough the [DOT] does not expressly state that the occupations identified by the [VE] require frequent bilateral overhead reaching, the [DOT's] broad definition of 'reaching' means that they certainly may require such reaching." Id. at 211.[6] Because the ALJ in Pearson failed to question the VE further to obtain a basis for relying on his testimony regarding the claimant's ability to reach overhead, the Fourth Circuit concluded the ALJ failed to identify or resolve the apparent conflict, and remand was required. Id. at 211-12.

Here, after presenting hypothetical questions, including one containing the RFC restrictions at issue, to the vocational expert, the ALJ asked the vocational expert as follows:

> Q Now to the extent the hypothetical question has limitations that are not specifically addressed by the DOT or the SCO, what did you base your testimony upon today, Ms. Moore?
>
> A It is based upon my education and my experience, as well as the professional research that I conduct as a rehabilitation counselor.

[6] As noted in Pearson, "[t]he [DOT] defines reaching as '[e]xtending hand(s) and arm(s) in any direction.'" Pearson, 810 F.3d at 210 (quoting Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App'x C ("Physical Demands"), § 8 (U.S. Dep't of Labor 1993)).

(Tr. at 79-80.) This exchange—the only part of the hearing to address conflicts in any way—fails to identify what, if any, specific limitations were not addressed by the DOT or SCO. As discussed above, the first step in Pearson requires the identification of any apparent conflict, and then once a conflict is identified, the second step of Pearson requires the ALJ to resolve the conflict by obtaining a basis for relying on the expert's testimony rather than the DOT. Here, the ALJ's question to the vocational expert skipped over the first Pearson requirement entirely. The question did not ask the expert to identify which RFC limitations conflicted with the DOT and/or the SCO, nor did it even ask which limitations were unaddressed by those publications. Instead, the question—and the vocational expert's answer to it—failed to identify any conflicts at all, and instead referred generically to limitations not covered by the DOT, and then proceeded directly to the second Pearson requirement, the resolution of the conflict, which the VE glossed over in the most generic terms possible, again without identifying any conflicts at all, or even specifying any areas not covered by the DOT. In short, the exchange between the ALJ and the vocational expert in this case failed to satisfy the requirements of Pearson. As stated in Pearson itself, the descriptions for the jobs relied upon at step five clearly show that frequent overhead reaching may be required. See Pearson, 810 F.3d. at 211. For the jobs identified by the vocational expert to constitute substantial evidence at this step, the ALJ, who bears the burden at step five, must demonstrate a proper basis for relying on the expert's testimony. This includes making sure that the vocational expert recognized all apparent conflicts, including the occasional overhead reaching requirement included both here and in Pearson, and took these conflicts into account when identifying jobs that an individual with Plaintiff's RFC limitations and other characteristics could perform.

See Ashley A.F. v. O'Malley, No. 1:22CV983, 2024 WL 345733, at *6 (M.D.N.C. Jan. 30, 2024) (remanding based on failure to resolve apparent conflict, where the VE remarked "that her testimony remained 'consistent with the DOT' and did not identify any areas of her testimony that conflicted with the DOT or that the DOT did not address"); Fogelman v. Saul, No. 1:19CV78, 2020 WL 1929072, at *10 (M.D.N.C. Apr. 21, 2020) (remanding where "the VE never specifically acknowledged the apparent conflict between the DOT's descriptions for those jobs as involving frequent or constant reaching . . . and the hypothetical's restriction to occasional overhead reaching, stating only, generically, that 'any factor which is simply not addressed by the DOT [is] based on [her] training and experience' " (emphasis in original)); Stowe v. Saul, No. 1:18CV121, 2019 WL 4016166, at *4 (M.D.N.C. Aug. 26, 2019) ("The ALJ asked the vocational expert generally whether her testimony was consistent with the DOT and its companion publications, but Defendant concedes that the ALJ never questioned the expert . . . for explanation regarding the apparent conflict between [the RFC's limitation to] occasional overhead reaching" and the DOT's description of frequent reaching required to perform the jobs at issue). These cases reflect that remand is necessary under Pearson where neither the ALJ nor the VE addressed the specific apparent conflict at issue. Indeed, the present case is very similar to Fogleman, in which the VE stated only generically that factors not addressed by the DOT were based on her training and experience. Likewise, the vague, blanket assertion offered by the vocational expert in this case fails to identify or demonstrate any recognition of the apparent conflict, let alone a basis for relying on her testimony rather than the plain wording of the DOT.

In summary, the VE in this case never meaningfully identified the conflict at issue here, and there is no testimony or discussion that is susceptible to judicial review explaining how the conflict was resolved. As discussed above, the Fourth Circuit clarified in Pearson that the VE's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the expert's testimony rather than the DOT. That analysis was not adequately performed here. Accordingly, this matter requires remand based on the analysis set out in Pearson.[7]

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, it is further ORDERED that Defendant's Dispositive Brief [Doc. #10] is DENIED, and Plaintiff's Dispositive Brief [Doc. #9] is GRANTED to the extent set forth herein.

This, the 21st day of September, 2026.

Joi Elizabeth Peake
United States Magistrate Judge

---

[7] The Court notes that the limitation to only occasional overhead reaching appears to have been included based on Plaintiff's rheumatoid arthritis, which caused numbness in her thumb and decreased ability to grip, and also caused her fingers to lock up in a claw position and her knuckles to swell. (Tr. at 26, 51, 66-67, 363, 403, 384-86, 397.) The Consultative Examiner concluded that Plaintiff could lift and carry 5-20 lbs only occasionally, due to rheumatoid arthritis and fibromyalgia. (Tr. at 386.) To the extent the RFC nevertheless allowed for frequent (up to 2/3 of the day) lifting, handling, and fingering, any remaining issues can be addressed on remand. See, e.g., Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D. Va. 2002) (on remand, the prior decision is of no preclusive effect, as it is vacated and the new hearing is conducted).